IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ASSOCIATED PRESS; CABLE NEWS NETWORK, INC.; THE NEW YORK TIMES CO.; POLITICO LLC; AND WP CO., LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED COURT RECORDS | Case No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
<u>PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS</u>**

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com

1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press, Cable News Network, Inc., The New York Times Co., POLITICO LLC and WP Co., LLC, d/b/a the Washington Post*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ...................................................................................................................2

    I.      Russian Interference In the 2016 Election ..................................................................2

    II.     The Special Counsel's Investigation............................................................................3

    III.    The Records Sought By the Media Coalition .............................................................4

ARGUMENT..........................................................................................................................5

    I.      THE PUBLIC'S FIRST AMENDMENT AND COMMON LAW RIGHTS
           OF ACCESS ATTACH TO THE WARRANT MATERIALS AND
           CANNOT BE OVERCOME HERE............................................................................6

           A.     The First Amendment Provides A Right Of Access To Warrant
                   Materials .........................................................................................................7

           B.     The Common-Law Right Of Access Also Applies To Warrant
                   Materials .........................................................................................................9

           C.     No Compelling Interest Justifies The Continued Blanket Sealing Of
                   The Warrant Materials ...................................................................................9

           D.     The Public's Interest In Disclosure Outweighs Any Need For Secrecy
                   Of The Warrant Materials.............................................................................14

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application of New York Times Co. for Access to Certain Sealed Court
    Records (In Re NYT),
    585 F. Supp. 2d 83 (D.D.C. 2008) ................................................................................. passim

*In re Application of WP Co. (In Re WP II),
    201 F. Supp. 3d 109 (D.D.C. 2016) ............................................................................... passim

*In re Application of WP Co. (In re WP I),
    No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016) ................................ 6, 8, 12

Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice,
    746 F.3d 1082 (D.C. Cir. 2014) .............................................................................................. 15

Globe Newspaper Co. v. Superior Court for Norfolk County,
    457 U.S. 596 (1982) ............................................................................................................... 10

Metlife, Inc. v. Financial Stability Oversight Council,
    865 F.3d 661 (D.C. Cir. 2017) ................................................................................................ 14

Monitor Patriot Co. v. Roy,
    401 U.S. 265 (1971) ............................................................................................................... 14

Nixon v. Warner Communications, Inc.,
    435 U.S. 589 (1978) ................................................................................................................. 9

Press-Enterprise Co. v. Superior Court of California, Riverside County (Press-
    Enterprise I),
    464 U.S. 501 (1984) ............................................................................................................... 10

In re Search Warrant for Secretarial Area Outside Office of Gunn,
    855 F.2d 569 (8th Cir. 1988) ................................................................................................... 7

In re Search Warrants Issued on May 21, 1987,
    No. 87-186 (JHG), 1990 WL 113874 (D.D.C. July 26, 1990) ................................................ 7

In re Special Proceedings,
    842 F. Supp. 2d 232 (D.D.C. 2012) ....................................................................................... 13

*United States v. Bus. of Custer Battlefield Museum & Store (Custer Battlefiled),
    658 F.3d 1188 (9th Cir. 2011) ................................................................................... 6, 7, 10, 12

United States v. Loughner,
    769 F. Supp. 2d 1188 (D. Ariz. 2011) .............................................................................. 12, 13

*United States v. Sealed Search Warrants,*
   868 F.3d 385 (5th Cir. 2017) ....................................................................................7, 9

*Virginia Department of State Police v. Washington Post,*
   386 F.3d 567 (4th Cir. 2004) .................................................................................10, 13

*\*Washington Post v. Robinson,*
   935 F.2d 282 (D.C. Cir. 1991) ...............................................................................11, 13

**Other Authorities**

Fed. R. Crim. P. 41(i) ........................................................................................................6

## **PRELIMINARY STATEMENT**

The public interest in receiving information regarding Special Counsel Robert Muller's investigation into Russia's interference in the 2016 elections (the "Russia Investigation") is beyond question. Through this action, The Associated Press ("AP"), Cable News Network, Inc. ("CNN"), The New York Times Company ("The Times"), POLITICO LLC ("Politico") and the WP Co., LLC, d/b/a/ the Washington Post (the "Post") (collectively, the "Media Coalition") seek to unseal court records concerning the Russia Investigation to provide more information to the American public about this vital issue.

Specifically, the Media Coalition seeks to vindicate the public's First Amendment and common-law right of access to the warrants, applications, supporting affidavits, and returns relating to all search or seizure warrants relevant to the prosecution of Roger J. Stone, Jr. ("Stone"), a former campaign adviser to President Trump (the "Warrant Materials").

The Warrant Materials should be released because they are records to which the public has qualified access rights under both the First Amendment and the common law. The First Amendment access right can be overcome only by a showing that secrecy is necessary to protect a compelling interest and any sealing is narrowly tailored to serve that interest. To be sure, there are significant interests that arguably may be at stake, such as protecting the integrity of the investigation, the secrecy of grand jury proceedings, the identities of confidential informants and the privacy of potentially innocent people. Those interests, however, are insufficient to overcome the overwhelming public interest in these materials and can in any event be served by narrowly tailored redactions to the documents. Under the common law, courts balance the public's right to information about the workings of the criminal justice system against the legitimate countervailing interests of the government. In this case, that balance tips decisively in

1

favor of the public. This Court, therefore, should order the Warrant Materials to be released, subject only to those precisely targeted redactions necessary to protect greater interests.

## BACKGROUND

### I. Russian Interference In The 2016 Election

As is now common knowledge, U.S. intelligence agencies have concluded that, during the 2016 presidential election, Russia engaged in an unprecedented effort to influence, undermine and discredit our democratic process with the goal of supporting the candidacy of President Donald Trump. Office of the Director of National Intelligence, Assessing Russian Activities and Intentions in Recent US Elections, at ii (Jan. 6, 2017), https://www.dni.gov/files/documents/ICA_2017_01.pdf. ("Intelligence Assessment"); *see also, e.g.*, S. SELECT COMM. ON INTELLIGENCE, THE INTELLIGENCE COMMUNITY ASSESSMENT: ASSESSING RUSSIAN ACTIVITIES AND INTENTIONS IN RECENT U.S. ELECTIONS, at 3 (July 3, 2018), https://www.intelligence.senate.gov/sites/default/files/publications/ssci_ica.pdf (concurring with intelligence community's findings and stating that "the Committee's investigation has exposed a far more extensive Russian effort to manipulate social media outlets to sow discord and to interfere in the 2016 election"). A core part of this effort involved operatives for the Russian intelligence agency GRU hacking the computer systems and email of various Democratic Party organizations and officials, stealing large quantities of email and other data, and facilitating the release of those stolen materials on such websites as WikiLeaks. Intelligence Assessment at 2-4. Russian intelligence also deployed a network of online "trolls" directed by the St. Petersburg-based Internet Research Agency to plant divisive political messages – primarily, but not exclusively, critical of Democratic nominee Hillary Clinton – online and in social media. *Id.*

## II.     The Special Counsel's Investigation

Beginning in the summer of 2016, the FBI and other federal authorities began a counterintelligence and criminal investigation that would eventually focus on the Russian government's "efforts to interfere in the 2016 presidential election, including the nature of any links between individuals associated with the [Trump] Campaign and Russia, and whether there was any coordination between the Campaign and Russia's efforts." Statement of the Offense at 1, *United States v. Flynn*, No. 1:17-cr-00232-EGS (D.D.C. Dec. 1, 2017), Dkt. 4.

There is no need to burden this Court with the details of the Russia Investigation – and criticism of it by President Trump and his supporters – that are well known. The Special Counsel's Office ("SCO") has secured the guilty pleas of five Trump campaign staffers or advisors, including his former campaign chairman and his deputy, the President's former personal attorney, and the former National Security Adviser. *See generally* SPECIAL COUNSEL'S OFFICE, http://www.justice.gov/sco (listing indictments brought and guilty pleas secured by SCO). The SCO also has secured indictments of the Internet Research Agency, more than two dozen individuals, and two other corporate entities alleged to have been employed by or associated with the GRU's election interference efforts. *See id.*

Notably for purposes of this action, both the SCO and various Congressional committees have investigated whether there was any foreknowledge or coordination between persons associated with the Trump campaign and the Russian intelligence operatives involved in the hacking and "trolling" operations.[1] Stone has been charged with obstructing and making false statements in testimony during those Congressional investigations, as well as with witness tampering. Indictment at 21-23, *United States v. Roger Stone* ("*Stone*"), No. 1:19-cr-00018-ABJ

---

[1] *See, e.g.*, Darren Samuelsohn, Austin Wright and Kyle Cheney, *Senate Intel putting Russia probe on fast track*, POLITICO (June 28, 2017), https://www.politico.com/story/2017/06/28/richard-burr-russia-probe-witnesses-240050.

3

(D.D.C. Jan. 24, 2019), Dkt. 1. The indictment alleges that Stone made false statements to the House and Senate intelligence committees regarding his efforts during the run-up to the 2016 election to gather information about the contents of Democrats' stolen data and the timing of when it would be released online, and his sharing of that information with the Trump campaign. *Id.* at 10-20.

### III.  The Records Sought By The Media Coalition

As noted above, the Media Coalition seeks the unsealing of Warrant Materials pertaining to the Stone prosecution. Specifically, the Media Coalition seeks records associated with the application for, issuance of, and returns regarding warrants related to the Russia Investigation generally and the Stone prosecution in particular. Because these warrant actions are sealed, the Media Coalition is unaware both of the precise number of warrants involved and the case numbers associated with those warrants, with one exception: The warrant for a search of Stone's New York apartment is No. 19MAG847 in the U.S. District Court for the Southern District of New York. *Here's the search warrant for Roger Stone's New York Residence*, CNN (Jan. 25, 2019), https://www.cnn.com/politics/live-news/roger-stone-mueller-indictment/h_1e32111873a6008d64a42710deea5e8e. The FBI also served search warrants at other locations related to Stone, including his Florida home and recording studio. *See, e.g.*, Mark Mazzetti, Eileen Sullivan and Maggie Haberman, *Indicting Roger Stone, Mueller Shows Link Between Trump Campaign and WikiLeaks*, THE NEW YORK TIMES (Jan. 25, 2019), https://www.nytimes.com/2019/01/25/us/politics/roger-stone-trump-mueller.html?module=inline; Katelyn Polantz, Sara Murray and David Shortell, *Mueller indicts Roger Stone, says he was coordinating with Trump officials about WikiLeaks' stolen emails*, CNN (Jan. 25, 2019), https://www.cnn.com/2019/01/25/politics/roger-stone-arrested/index.html.

4

Additionally, the SCO has said in a court filing that the case against Stone arises at least in part from "common search warrants" with *United States v. Netyksho*, No. 1:18-CR-215 (D.D.C. filed July 13, 2018), which is a case against "eleven Russian military officers" charged with "conspiring to hack into the computers of U.S. persons and entities involved in the 2016 U.S. presidential election, steal documents from those computers, and stage releases of the stolen documents to interfere with the 2016 U.S. presidential election." Govt.'s Resp. to Def.'s Obj. to Notice of Designation of Pending Related Crim. Case at 2-3, *Stone*, (filed Feb. 15, 2019), Dkt. 37. The Government further explained that "evidence in this case was found in accounts that were subject to search warrants executed in *Netyksho*." *Id.* at 3. During the investigation of Russian election interference, "the government obtained and executed dozens of search warrants on various accounts used to facilitate the transfer of stolen documents for release, as well as to discuss the timing and promotion of their release. Several of those search warrants were executed on accounts that contained Stone's communications with Guccifer 2.0 [the online persona allegedly used by some of the *Netyksho* defendants] and with" the organization that posted some of the stolen material. *Id.* The SCO stated the warrants would be produced to Stone in discovery and described them in more detail in a sealed addendum. *Id.* at 4.

The Media Coalition therefore seeks access to materials related to all of these search warrants, as well as any others the existence of which is not yet publicly known. For those Warrant Materials produced to Stone in discovery, the Media Coalition respectfully requests access to those materials in the form produced to Stone.

## ARGUMENT

The public has a presumptive, albeit qualified right of access to search warrant materials that is particularly urgent in this case given the importance of the Russia Investigation to our

5

democracy. This qualified right, which arises under both the First Amendment and the common law, requires the release – with redactions, where necessary – of the Warrant Materials.

I.  **THE PUBLIC'S FIRST AMENDMENT AND COMMON LAW RIGHTS OF ACCESS ATTACH TO THE WARRANT MATERIALS AND CANNOT BE OVERCOME HERE**

Warrants, including the applications, affidavits and returns in connection therewith, are presumptively public both under the law and as a matter of standard practice in this and other federal courts. *See, e.g.*, *In re Application of WP Co.* (*In Re WP II*), 201 F. Supp. 3d 109, 121 (D.D.C. 2016) ("'warrant applications and receipts are routinely filed with the clerk of court without seal'") (quoting *In re Application of New York Times Co. for Access to Certain Sealed Court Records* (*In Re NYT*), 585 F. Supp. 2d 83, 88 (D.D.C. 2008)); *United States v. Bus. of Custer Battlefield Museum & Store* (*Custer Battlefield*), 658 F.3d 1188, 1193-94 (9th Cir. 2011) (same); Fed. R. Crim. P. 41(i) ("The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized."). In this Court "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available." *In re NYT*, 585 F. Supp. 2d at 88 n.8.

Federal courts considering the question routinely have held that the public has a qualified right of access to warrant materials, though there has been some inconsistency in the courts' conclusions regarding the stage of the proceedings at which that right attaches and whether it arises under the First Amendment, the common law, or both. *See, e.g.*, *In re Application of WP Co. LLC* (*In re WP I*), No. 16-mc-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) (recognizing First Amendment right of access to search warrant records issued during investigation that had been closed); *In re NYT*, 585 F. Supp. 2d at 87 (recognizing both First Amendment and common-law right of access to warrant materials after conclusion of

6

investigation); *In re Search Warrants Issued on May 21, 1987*, No. 87-186 (JHG), 1990 WL 113874, at *6 (D.D.C. July 26, 1990) (recognizing common-law right of access to search warrant materials after indictment); *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017) (common-law right of access can apply to pre-indictment warrant materials; trial court must determine whether to unseal on case-by-case basis); *Custer Battlefield*, 658 F.3d at 1193-94 (recognizing common-law right of access to warrant materials after completion of criminal investigation); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573-74 (8th Cir. 1988) (recognizing First Amendment right of access to search warrant materials in ongoing criminal investigation). The D.C. Circuit has not directly ruled on the precise question at issue here: (1) whether the right of public access to warrant materials attaches upon the warrant's execution and return to the issuing court or (2) whether that access right instead attaches only once the subject or target of the warrant has been indicted or pleaded guilty. Under the analysis set forth by the D.C. Circuit and applied by other courts in this district, however, the First Amendment and common-law public access rights to warrant materials both attach upon return, not at some later point in the prosecution. And even if it were the case that these rights of access attached only after the target of a warrant has been indicted, Stone and the Russians involved in the hacking have been indicted.

**A.     The First Amendment Provides A Right Of Access To Warrant Materials**

It is well settled that "[t]he First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents." *In re WP II*, 201 F. Supp. 3d at 117 (citing *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 603-04 (1982)). This right of access arises where the court answers two questions affirmatively: "(1) whether the place and process have historically been open to the press and general public, and (2) whether 'public access plays a significant positive role in the functioning of the particular process in

7

question.'" *In re NYT*, 585 F. Supp. 2d at 87 (citing *Press–Enter. Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 8-9 (1986)). Applying this "experience and logic" test, courts in this district have recognized that a First Amendment right of public access applies to warrant materials at the latest after an investigation has concluded. *In re WP I*, 2016 WL 1604976, at *2; *In re NYT*, 585 F. Supp. 2d at 88.[2] Here, experience and logic compel the conclusion that the First Amendment provides a right of access to the warrant materials the Media Coalition seeks regardless of whether the overall investigation can formally be deemed "concluded."

First, as discussed *supra*, warrant materials have long been presumptively public, usually upon the return of the executed warrant, both in the District of Columbia and other federal courts. *In re WP II*, 201 F. Supp. 3d at 121; *In re NYT*, 585 F. Supp. 2d at 88 (noting that warrant materials have been publicly available as matter of "routine historical practice"). And, as Judge Lamberth recognized in *In re NYT*, the fact that there is a common-law right of access to warrant materials also meets the "experience" prong of the test. 585 F. Supp. 2d at 89 ("Therefore, the fact that there is a common law tradition of access to warrant materials—which is acknowledged by the government in this case—weighs strongly in favor of a First Amendment qualified right of access to warrant materials."); *see also infra* Section I.B. Experience, therefore, counsels that warrant materials should be presumptively available to the public upon the warrant's execution and return to the magistrate, and in any event no later than the point where an indictment has been issued or a guilty plea entered.

Second, courts also have recognized several strong public policies that are served by public access to warrant materials and that accordingly satisfy the "logic" prong of the test. As

---

[2] The court in *In re NYT* held that there was no ongoing investigation although the government argued that it had not "formally closed" the "Amerithrax" probe: The court noted that the government believed the 2001 anthrax attacks were the work of one person, acting alone, and that person had committed suicide. 585 F. Supp. 2d at 88 n.7.

8

the Fifth Circuit recently observed, "the right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *Sealed Search Warrants*, 868 F.3d at 395; see also *In re NYT*, 585 F. Supp. 2d at 90 ("The fact that proceedings are open demonstrates to the public that judicial processes are fair and that there is nothing to hide."). This openness "'gives assurance that established procedures are being followed and that deviations will become known' and corrected." *Id.* (citation omitted). Especially given the criticism by the President and his supporters that the Russia Investigation and prosecutions arising from it are illegitimate, these public policy considerations firmly support the First Amendment right of access to these materials after the warrants' execution or, at the latest, after an indictment or guilty plea.

### B.  The Common-Law Right Of Access Also Applies To Warrant Materials

The Supreme Court has recognized that, under the common law, the public has a qualified right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This common-law right is "broader, but weaker" than the First Amendment access right. *In re WP II*, 201 F. Supp. 3d at 118 (citation omitted). Courts in the D.C. Circuit have consistently held that warrant materials are "judicial records" subject to this common-law right of access because they are "central to a court's probable cause determination." *Id.* at 129 (quoting *Custer Battlefield*, 658 F.3d at 1193); *see also In re NYT*, 585 F. Supp. 2d at 87 n.2 (noting that government had conceded that warrant materials are subject to common-law right of access).

### C.  No Compelling Interest Justifies The Continued Blanket Sealing Of The Warrant Materials

To overcome the public's First Amendment right of access, a party opposing disclosure must show that keeping the records secret serves a compelling governmental interest and is

9

narrowly tailored to serve that interest. *Globe Newspaper*, 457 U.S. at 606-07; *In re NYT*, 585 F. Supp. 2d at 91. The Supreme Court has directed that "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court of California, Riverside Cty.* (*Press-Enterprise I*), 464 U.S. 501, 510 (1984).

It is possible, if not likely, that the government can articulate one or more compelling interests at stake here. But the continued categorical sealing of all of the Warrant Materials cannot properly be said to be narrowly tailored to serve any such interest, which can instead be served by targeted redactions. Because of the First Amendment rights involved and the pressing public interest in the Russia Investigation, the government (or any other party seeking secrecy) should be required to show (1) what specific compelling interest is served by the sealing or redaction of each specific document and (2) why sealing, rather than redaction or other mitigation, is the most narrowly tailored means to serve that interest. The Media Coalition respectfully submits that neither the government nor any other party will be able to justify blanket sealing of the Warrant Materials at issue here.

Perhaps the most obvious compelling interest the government might be expected to cite is the need to protect the integrity of an ongoing investigation. *See, e.g.*, *Custer Battlefield*, 658 F.3d at 1195 n.5. The investigation of Stone presumably is complete because he has been indicted. Moreover, this is not a situation in which the existence of the investigation is unknown. The Media Coalition does not seek in any way to jeopardize or impede the Russia Investigation or any related probes. But "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004) (government must provide

"specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information" to justify sealing judicial records). Releasing the warrant materials already provided to Stone, for example, would be unlikely to jeopardize an ongoing investigation because they have been provided to a key (and quite outspoken) target of that investigation who is now under indictment. Likewise, unsealing warrant materials directly related to those defendants who have been indicted or pleaded guilty would be unlikely to interfere with the investigation of those individuals. Similarly, release of warrant materials regarding Russian nationals or others outside of the jurisdictional reach of U.S. courts likely would not interfere with those portions of the investigation related to the already-indicted foreign nationals. And the release of information that already has been widely publicized by the news media cannot threaten an ongoing criminal investigation. *Washington Post v. Robinson*, 935 F.2d 282, 291–92 (D.C. Cir. 1991) (government did not meet its burden to justify sealing plea agreement to protect ongoing investigation when plea already had been reported by news media). To the extent the Warrant Materials contain specific pieces of information that the government can show would compromise a specific aspect of the Russia Investigation if publicly disclosed at this time, those specific pieces of information can and should be redacted to allow for the maximum possible public access to the rest of these judicial records.

Other interests that the government might assert are at stake include the need to guard the secrecy of grand jury proceedings, shield the identities of confidential informants, and protect the Sixth Amendment rights of the accused. As for the latter concern, those considerations are not in play for defendants who have already pleaded guilty. More broadly, "[i]n many cases, courts can accommodate these concerns by redacting sensitive information rather than refusing to unseal the

11

materials entirely." *Custer Battlefield*, 658 F.3d at 1195 n.5.  The Media Coalition does not object to redactions or withholdings that are narrowly tailored to serve these interests, such as removing the names of and identifying information regarding confidential informants whose identifies, in fact, currently remain confidential.

Privacy considerations may in some limited circumstances qualify as a compelling interest, but it bears emphasis that "privacy and reputational concerns typically don't provide sufficient reason to overcome a qualified First Amendment right of access." *United States v. Loughner*, 769 F. Supp. 2d 1188, 1196 (D. Ariz. 2011).  One situation in which privacy interests did rise to this level was presented in *In re WP II*, in which the court denied the Post's request to unseal warrant information related to an ancillary investigation involving the "sexual preferences and partners" of a cooperating witness in the investigation of campaign finance violations in the District.  201 F. Supp. 3d at 126-27.  However, there is no indication that any of the Warrant Materials related to the Russia Investigation involve such highly intimate details that are not directly relevant to the core of the investigation – and, again, any such concerns could be adequately satisfied by redactions rather than indiscriminate sealing.  Likewise, the privacy interests of potentially innocent third parties can be protected in the same way via targeted and specific redactions.  *In re WP I*, 2016 WL 1604976, at *2.

Moreover, at least one person has come forward to identify himself as an individual referred to pseudonymously in the Stone indictment, thus obviating any need to shield his identity.  *See* Mot. for Leave to File *Amici Curiae* Br. at 1, *Stone* (filed Feb. 12, 2019) (Dkt. 32) (volunteering that movant Jerome Corsi is the individual identified as "Person 1" in the indictment).  And because it is clear that the entity referred to in the Stone indictment as "Organization 1" is WikiLeaks, no purpose would be served in keeping its name secret.  *See,*

12

*e.g.*, Darren Samuelsohn, Josh Gerstein, Marc Caputo and Caitlin Oprysko, *Roger Stone arrested in Mueller investigation*, Politico (Jan. 25, 2019), https://www.politico.com/story/2019/01/25/roger-stone-arrested-following-mueller-indictment-1125445.("The seven-count indictment alleges Stone misled lawmakers on the committee about his efforts to communicate with WikiLeaks and his contacts with the Trump campaign.").

Indeed, the nature of the Russia Investigation is such that many, if not most, of those potentially identified in the Warrant Materials are people like Corsi who either already have been publicly identified (or identified themselves) in connection with the investigation or have a diminished privacy interest because they voluntarily sought public office and/or positions in the maelstrom of a hotly contested presidential campaign. *See In re NYT*, 585 F. Supp. 2d at 93 n.14 ("injury to official reputation is an insufficient reason for repressing speech that would otherwise be free") (quoting *In re McClatchy Newspapers, Inc.,* 288 F.3d 369, 374 (9th Cir. 2002)). For example, federal prosecutors involved in convicting a sitting U.S. Senator on corruption charges that were later vacated because of prosecutorial misconduct did not have a privacy interest in sealing a report about their misdeeds. *In re Special Proceedings*, 842 F. Supp. 2d 232, 246 (D.D.C. 2012) (noting that "the identity of the subjects was known from the outset of the investigation, the matters under investigation were largely known to the public from the outset and arose from the subject attorneys' conduct during the proceedings in a highly-publicized criminal trial"). Further, there is no compelling interest in protecting the "privacy" of facts that are already public. *Robinson*, 935 F.2d at 291-92; *Virginia State Police*, 386 F.3d at 579; *Loughner*, 769 F. Supp. 2d at 1196.

In sum, insofar as the public record reveals, there is no apparent interest at stake sufficiently compelling to justify the continued wholesale sealing of the Warrant Materials, and

any compelling interests that conceivably may be implicated could be served by narrowly tailored redactions.

        **D.**    **The Public's Interest In Disclosure Outweighs Any Need For Secrecy Of The Warrant Materials**

In determining whether the strong common-law presumption in favor of public access requires unsealing of a particular judicial record, a court must "balance the government's interest in keeping the document secret against the public's interest in disclosure." *In re WP II*, 201 F. Supp. 3d at 118. Courts considering whether to order disclosure pursuant to the common-law right must weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)); *accord In re NYT*, 585 F. Supp. 2d at 92; *WP II*, 201 F. Supp. 3d at 118. Here, an analysis of the five relevant *Hubbard* factors[3] leads to the conclusion that the Warrant Materials should be released pursuant to the common-law access right.

The first and second factors weigh heavily – and conclusively – against continued secrecy. It is beyond debate that the public interest in access to the Warrant Materials could not be higher. *See, e.g., Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the constitutional guarantee [of free speech] has its fullest and most urgent

---

[3] As Judge Lamberth explained, the sixth *Hubbard* factor was unique to that case, "in which a private party sought to prevent disclosure of documents recovered during a search." *In re NYT*, 585 F. Supp. 2d at 92 n.13.

14

application precisely to the conduct of campaigns for political office."). The Russia Investigation goes to the heart of the integrity of the political process, the potential corruption or other misconduct of the President of the United States and his closest advisers – or, as some of the President's supporters have argued, a corrupt conspiracy by some in law enforcement to harm the President – and the ability of the justice system to fairly and effectively investigate and, where necessary, prosecute any of these potential crimes. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing "weighty public interest in shining a light on the FBI's investigation of major political corruption" and importance of materials that "shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government"). Already, the President's former national security adviser, former campaign chairman and his deputy, and two former campaign aides have pleaded guilty to committing felonies. And, of course, one of the ultimate questions in the Russia Investigation is whether the President himself unlawfully attempted to influence or obstruct the probe. The gravity and importance of this criminal investigation is second to none in our nation's history, and therefore the public's interest in the transparency of that investigation is paramount to all but the most crucial constitutional considerations.

      The third and fourth factors – any objections to unsealing, the identity of the objectors, and the strength of the objections – remain to be determined, but it is difficult to conceive of circumstances that would be sufficient to overcome the public interest in release of the Warrant Materials. As discussed *supra*, the individuals most directly implicated by the Warrant Materials either have already been indicted or pleaded guilty, are beyond this Court's jurisdictional reach, or are among the most powerful and public political figures of our time. Consequently, any

legitimate objections they may raise could adequately be addressed by targeted redactions. Finally, the risk of prejudice to the investigation or the prosecutions, while not unimportant, pales in comparison to the public interest and also may be appropriately mitigated with any necessary redactions.

The public's common-law right to access the Warrant Materials, therefore, far outweighs any countervailing considerations, and the blanket sealing of them should not continue.

## CONCLUSION

For all of the foregoing reasons, the Media Coalition respectfully requests that this Court grant its motion and enter an order unsealing the Warrant Materials.

Respectfully submitted,

Dated: February 25, 2019                    BALLARD SPAHR LLP


By:   /s/ Jay Ward Brown

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press, Cable News Network, Inc., The New York Times Co., POLITICO LLC and WP Co., LLC, d/b/a the Washington Post*