UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ASSOCIATED PRESS; CABLE NEWS NETWORK, INC.; THE NEW YORK TIMES CO.; POLITICO LLC; AND WP CO., LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED COURT RECORDS | Misc. Action No. 19-0029 (ABJ) |

**GOVERNMENT'S RESPONSE TO MOTION
FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS**

The United States of America respectfully opposes the motion by a coalition of media companies (Media Coalition) to unseal certain search warrant materials. The movants seek unsealing of "warrants, applications, supporting affidavits, and returns relating to all search or seizure warrants relevant to the prosecution of Roger J. Stone, Jr." Doc. 4, at 2 (Order) (quoting Media Coalition Mem. 1). The request for broad unsealing of these warrant materials should be denied. Although the Special Counsel has concluded his investigation, the requested materials concern investigations that remain ongoing, a trial in *United States v. Stone*, No. 19-cr-18-ABJ (D.D.C.) that is scheduled for later this year, and the privacy interests of uncharged third parties. No right of public access applies to such materials.

A First Amendment right of access can be found only where a long and unbroken history of public access exists and where access would play a significant positive role in the governmental process. Neither requirement is satisfied here. Search warrant materials regularly remain sealed, particularly while investigations and cases are ongoing. And a right of public access risks jeopardizing open investigations and ongoing prosecutions. In any event, substantial law-enforcement and fairness interests would overcome any qualified First Amendment right of access.

The same is true of movants' reliance on the qualified common law right of access to public records. That right is subject to a balancing of interests, and here, strong public interests support finding no right of public access at this time. Warrant materials reveal investigative sources and methods, preliminary factual and legal theories, and evidence that has already been gathered— including from grand jury processes. They show what has been searched and indicate what has not been searched. And because of the interconnected nature of the Special Counsel's investigations, the category of materials here sweeps more broadly than Stone and the specific crimes with which he has been charged. Making this information public could harm other ongoing investigations, could interfere with Stone's trial, and could unfairly harm uncharged individuals who are described in warrant applications or returns.

## STATEMENT

### A. Factual Background

1. On March 20, 2017, then-FBI Director James B. Comey testified before the House Permanent Select Committee on Intelligence about the FBI's investigation into Russian interference with the 2016 presidential election. In open session, Comey stated:

> I have been authorized by the Department of Justice to confirm that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts.

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017), *available at* https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation. Comey further stated that "[a]s with any counterintelligence investigation, this will also include an assessment of whether

any crimes were committed." *Id.* He could not "say more about what [the FBI is] doing and whose conduct [it is] examining" because "it is an open, ongoing investigation, and is classified." *Id.*

2. On May 17, 2017, then-Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters." Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017) (capitalization omitted). The Order authorized the Special Counsel "to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including: (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *Id.* ¶ (b).[1] The Order further authorized the Special Counsel "to prosecute federal crimes arising from the investigation of these matters." *Id.* ¶ (c).

In conducting the investigation, agents assisting the Special Counsel's Office have applied for, obtained, and executed search and seizure warrants under Rule 41 of the Federal Rules of Criminal Procedure, as well as warrants under the Stored Communications Act (SCA) requiring the disclosure and authorizing the search of electronic communications contents and records, *see* 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). The issuing courts and magistrate judges have granted sealing orders covering the applications and warrants in order to prevent premature disclosures that would jeopardize the ongoing investigation.

---

[1] 28 C.F.R. § 600.4(a) confers "the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses."

3. The Special Counsel's investigation has involved multiple lines of inquiry. Many have been handled in the Special Counsel's Office. But the Special Counsel has also referred a number of matters to other offices in the government for investigation.

On January 24, 2019, a grand jury in this District indicted Roger J. Stone, alleging that he obstructed a congressional proceeding, made false statements to Congress, and engaged in witness tampering. *See* Indictment, Doc. 1, *United States v. Stone*, No. 19-cr-18-ABJ (D.D.C.). Pursuant to Local Criminal Rule 57.7(c), on February 15, the Court ordered the parties to "refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case." *Stone, supra*, Doc. 36, at 3. The Court observed that "[b]ecause lawyers have special access to information . . . their extrajudicial statements pose a threat to the fairness of a pending proceeding." *Id.* at 1 (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1991)). The Court explained that the restriction on public statements was intended, among other things, "to safeguard [Stone's] right to a fair trial" and "to ensure that the Court has the ability to seat a jury that has not been tainted by pretrial publicity." *Id.* at 3. Trial in that case is scheduled for November 5. *Stone, supra*, Doc. 65, at 2.

4. On March 22, 2019, the Special Counsel notified the Attorney General that he had completed his investigation into Russian interference in the 2016 presidential election. The Special Counsel, however, referred a number of matters to other offices in the Department of Justice. Those matters remain ongoing.

**B. Motion for Access to Search Warrant Records**

The movants seek to unseal search warrant materials related to the Stone prosecution. Specifically, the movants seek unsealing of "warrants, applications, supporting affidavits, and returns relating to all search or seizure warrants relevant to the prosecution of Roger J. Stone, Jr."

Doc. 4, at 2 (Order) (quoting Media Coalition Mem. 1).[2] It is unclear whether the movant's request is limited to warrants issued pursuant to Rule 41 or also includes warrants under the SCA. In an abundance of caution, the government is treating the request as covering both categories. It is similarly unclear whether the reference to "warrants relevant to the Prosecution of Roger J. Stone, Jr." means only warrants to search Stone's property and facilities or includes other warrants that were executed as part of the same line of investigation. Again, in an abundance of caution, the government is treating the request as covering both categories.[3]

Pursuant to this Court's Order (Doc. 4, at 2), the government is submitting a sealed attachment that lists the warrants that the government understands to be implicated by this motion and identifies what has been provided to Stone. The government has served that attachment on counsel for Stone but not on the media coalition. The Court additionally ordered the government to identify whether this motion covers any materials considered in *In re Application of the Associated Press*, No. 18-mc-0041-ABJ, that have not already been released in full. Doc. 4, at 2. The government does not believe that any of the warrant materials sought in this motion were at issue in that prior case.

**ARGUMENT**

Invoking both the First Amendment and the common law, movants seek unsealing of the search warrant materials—including warrants, applications, affidavits, and returns—in the Special

---

[2] In places, the movant more broadly references warrant materials pertaining to "the Russia investigation" (Mot. 1, 4; Mem. 4) and once references "Manafort records" (Mot. 3). Consistent with this Court's March 1, 2019 order (Doc. 4, at 2), and the movants' detailed description of the records sought, *see* Mem. 4-5, the government understands those references as context for this specific request to unseal records related to the prosecution of Stone. *See* Mot. 1, 3, 4; Mem. 1, 4, 5.

[3] The government does not understand the request to include warrants that were not related to Stone or that line of investigation but that merely happened to yield evidence that concerns Stone and is being provided to him in discovery.

Counsel's investigation, with limited redactions. That request should be rejected. Courts have, virtually without exception, recognized that the First Amendment provides no right of access to search warrant materials during open, ongoing investigations. In any event, any such First Amendment right would be overcome by the compelling interests in protecting the criminal process and the rights of individuals. The result has been the same under the broader, but weaker, qualified common law right of access to public records. Disclosure at this juncture could harm ongoing investigations, interfere in the upcoming Stone trial, and reveal persons within the scope of both closed and ongoing investigations who have not been charged.

Movants seek to advance the public's interest in understanding more about the Special Counsel's investigation. That is an important and valuable function of the press. But that interest does not take precedence over the strong public interest in protecting ongoing investigations against the prejudice from premature disclosure, ensuring the fairness and integrity of criminal proceedings, and protecting uncharged persons from unjustified reputational harm. Although movants suggest that redactions may address those concerns, redactions are not viable option as this juncture. The category of materials sought is voluminous, and those materials are replete with sensitive information. Any attempt to redact them would reveal little information to the public, would risk unintentional disclosure of sensitive information, and would impose a tremendous burden on the government.

**I.     The First Amendment Does Not Entitle Movants To The Requested Search Warrant Materials**

The First Amendment protects a qualified "right of access to criminal proceedings," *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*), but that right does not apply to all phases of the criminal process. The public possesses a qualified First Amendment right of access to judicial proceedings and records only if "(i) there is an 'unbroken, uncontradicted

history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding." *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion)). Neither requirement is satisfied. And even assuming the existence of such a right, it would be overcome by compelling government interests.

### A. The Test For Identifying A First Amendment Right Of Access Turns On A History Of Openness And A Beneficial Effect On The Proceeding

The First Amendment guarantees "the freedom of speech, or of the press." U.S. Const., Amend. I. As a means of furthering First Amendment interests, the Supreme Court has recognized an "implicit," qualified First Amendment "right of access" for the public to attend criminal trials. *Press-Enterprise II,* 478 U.S. at 7 (first quotation from *Waller v. Georgia*, 467 U.S. 39, 46 (1984)); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-606 (1982) (recognizing that "the press and general public have a constitutional right of access to criminal trials," to ensure an "informed" "discussion of governmental affairs").

Two features of criminal trials led to recognition of that right. First, during an "unbroken, uncontradicted history" dating back centuries, criminal trials have "been open to all who care to observe" and public access "inher[ed] in the very nature of a criminal trial." *Richmond Newspapers*, 448 U.S. at 564, 573 (plurality opinion); *accord Globe Newspaper*, 457 U.S. at 605 (criminal trials have "long been presumptively open," and that "uniform rule" is virtually without exception); *see* U.S. Const. Amend. VI ("the accused shall enjoy the right to a speedy and public trial"). Second, public access "to criminal trials plays a particularly significant role in the functioning of the judicial process" because scrutiny by the public "safeguards the integrity of the factfinding process," "fosters an appearance of fairness," and "permits the public to participate." *Globe Newspaper*, 457 U.S. at 606; *accord Press-Enterprise II*, 478 U.S. at 8-9.

Applying those two considerations, the Supreme Court has found a First Amendment right of access to the jury-selection stage of criminal proceedings, *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 505-513 (1984) (*Press-Enterprise I*), and to the transcript of a "preliminary hearing" in a criminal case that "function[ed] much like a full-scale trial," *Press-Enterprise II*, 478 U.S. at 7. The D.C. Circuit has also found a qualified First Amendment right of access to completed plea agreements. *Brice*, 649 F.3d at 799. But the Supreme Court has also recognized that "[a]lthough many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of governmental operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9. As a "classic example" of a proceeding that demands secrecy, the Court pointed to the grand jury system. *Id.* at 9 (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)); *see Douglas Oil*, 441 U.S. at 218-219 (explaining that revelation of grand jury proceedings would pose investigatory threats and unjustly harm persons who are accused but not charged); *see also Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, No. 13-mc-712-BAH, 2018 WL 1129660, at *18 (D.D.C. Feb. 26, 2018) (*Leopold*) (drawing analogy between SCA warrants and grand jury subpoenas, for which "[n]o historical tradition of public access" exists).

Accordingly, a claimed First Amendment right of access must meet a two-part "experience and logic" test. *Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016) (*Matter of Washington Post*); *see Press-Enterprise II*, 478 U.S. at 8-9. To meet the test of experience, the "historical tradition" of public access must be of "some duration," *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985), reflecting an "unbroken, uncontradicted history of openness," *Brice*, 649 F.3d at 795 (internal quotation marks omitted). To meet the test of logic, public access must play "a significant positive role in the functioning of

the particular process in question." *Press-Enterprise II*, 478 U.S. at 8.  Both tests must be satisfied "before a constitutional requirement of access can be imposed."  *Reporters Comm.*, 773 F.2d at 1332.

> **B**. **The First Amendment Does Not Guarantee A Qualified Right Of Public Access To Warrant Materials In An Ongoing, Open Investigation, Or With An Upcoming Trial**

Applying the "experience and logic" test, movants have no First Amendment right of access to the warrant materials being sought.  Because the warrants at issue here relate to ongoing criminal investigations and an upcoming criminal trial, movants cannot invoke the First Amendment as a basis for unsealing.

1. Initially, no "historical tradition of accessibility" attaches "to documents filed in search warrant proceedings."  *In re Search of Fair Finance*, 692 F.3d 424, 431 (6th Cir. 2012); *see, e.g.*, *United States v. Pirk*, 282 F. Supp. 3d 585, 598-600 (W.D.N.Y. 2017) (collecting cases and discussing the issue).  Proceedings for the issuance of search warrants "are not, and have not been, public," and "are 'necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence.'"  *Fair Finance*, 692 F.3d at 430 (quoting *Franks v. Delaware*, 438 U.S. 154, 169 (1978)).  And "no evidence" supports the conclusion that search warrant materials have "historically being made open to the press and public" after execution.  *Id.*; *accord In re Baltimore Sun Co.*, 886 F.2d 60, 64 (4th Cir. 1989).

Although warrant applications and returns are filed with district court clerks, "the government . . . routinely obtain[s] sealing orders," and given "the confidentialities involved in criminal investigations," courts have "generally afforded deference" to those requests.  *Fair Finance*, 692 F.3d at 431; *see also Leopold*, 2018 WL 1129660, at *15 (the government has "'always been able to restrict access' to SCA warrants . . . by requesting a sealing order") (quoting *United States v. Appelbaum*, 707 F.3d 283, 291 n.9 (4th Cir. 2013)).  It may be the case today that

some search warrant affidavits are made available in the clerk's office after execution. *Id.* at *16 (discussing contemporary practice as described by some courts). But "the fact that the government may in some instances allow documents filed after the execution of the search warrant to become public" does not "evidence . . . an *historical* tradition of accessibility." *Fair Finance*, 692 F.3d at 431 (emphasis added).

Nor does logic support a right of access to search warrant materials. "[P]ublic access would not play a significant positive role in search warrant proceedings." *Fair Finance*, 692 F.3d at 431. Indeed, logic undercuts any such generalized right. Even after warrants are executed, routine disclosure of the information contained in the documents would be harmful. Warrant applications ordinarily "detail the government's evidence of criminal activity," "identify information sources, such as wiretaps," "reveal the government's preliminary theory of the crime being investigated," and "could alert others" who may be suspects. *Id.* at 432. Disclosure of this information could threaten investigations, invade the privacy of "innocent people," and force the government "to be more selective in the information it disclose[s]" when seeking warrants. *Id.* And while public oversight of search warrant proceedings may encourage compliance with the law, such "monitoring of search warrant proceedings" already effectively occurs though suppression proceedings and damages actions. *Id.* at 432-433; *see United States v. Grubbs*, 547 U.S. 90, 99 (2006) (protection of property owners' Fourth Amendment rights occurs through "a right to suppress evidence improperly obtained and a cause of action for damages").

Consistent with that analysis, court after court has found "no First Amendment right of access to documents filed in search warrant proceedings." *Fair Finance*, 692 F.3d at 433 (6th Cir.); *accord Baltimore Sun Co.*, 886 F.2d at 62, 64-65 (4th Cir.); *see also, e.g., Pirk*, 282 F. Supp.

3d at 597-601 (collecting cases); *cf. Leopold*, 2018 WL 1129660, at *14-*19 (no First Amendment right for Stored Communications Act warrants).[4]

2. The consensus is even stronger with respect to search warrant materials related to ongoing matters. The Court need go no farther to resolve this case.

a. Even those district courts that have found a qualified First Amendment right of access for "post-investigation warrant materials" have, to the government's knowledge, limited their holdings to warrant materials "after an investigation has concluded." *In re N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 88, 90 n.10 (D.D.C. 2008); *Matter of the Application of WP Co. LLC*, No. 16-mc-351-BAH, 2016 WL 1604976, at *2 & n.2 (D.D.C. Apr. 1, 2016) (explaining that "courts have generally precluded access to warrant materials relating to an *ongoing* investigation" and emphasizing that the request involved a "now-closed" investigation); *see Leopold*, 2018 WL 1129660, at *1, *32 (noting different treatment for "ongoing investigations"); *Pirk*, 282 F. Supp. 3d at 600 (even assuming that a First Amendment right would otherwise exist, no right should be found where "the Government has consistently represented that the investigation is ongoing").

Declining to recognize any constitutional right of access to search warrant materials in open investigations correctly applies the experience-and-logic test. As a matter of practice, warrants typically are sealed while an investigation remains ongoing, so the public does not have

---

[4] *See also Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989) ("The public has no qualified First Amendment right of access to warrant materials during the pre-indictment stage of an ongoing criminal investigation"). Only one court of appeals has recognized a qualified right of access in an open investigation, but it went on to deny access to the search warrant materials by the related route of finding that a compelling interest in the ongoing investigation justified non-disclosure. *See In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569, 573-574 (8th Cir. 1988). As other courts have noted, *Gunn*'s threshold access holding is "unpersuasive." *Fair Finance*, 692 F.3d at 433 n.3.

access to them. *See Computer Prof'ls for Soc. Responsibility v. Secret Serv.*, No. 92-5140, 1993 WL 20050, at *1 (D.C. Cir. Jan. 5, 1993) (per curiam) ("[T]here is no clear tradition of public access to search warrant materials related to an ongoing investigation."); *see also United States v. Business of Custer Battlefield Museum*, 658 F.3d 1188, 1193 (9th Cir. 2011) (explaining, in analysis of common law right of access, that public access to warrant materials has historically varied between "early stages of criminal proceedings" and "[p]ost-investigation") (emphasis omitted); *Leopold*, 2018 WL 1129660, at *15. And as matter of practice, where a defendant will soon be tried, courts and the government often limit the public dissemination of evidence, factual theories, and other allegations of other uncharged conduct about a criminal prosecution, to protect the integrity of the criminal trial. *See, e.g.,* D.D.C. LCrR 57.7(b).

Extending a public right of access while an investigation remains open would also thwart, rather than enhance, the criminal process. *See Press-Enterprise II*, 478 U.S. at 8. As in the grand jury context discussed by the Supreme Court, "it takes little imagination to recognize" that an ongoing criminal investigation is the "kind[] of government operation[] that would be totally frustrated if conducted openly." *Id.* at 8-9. As discussed above, disclosure of warrant documents could compromise sources, jeopardize investigative avenues, and lead to the loss of evidence. *See Fair Finance*, 692 F.3d at 432; *Times Mirror, Co., v. United States*, 873 F.2d 1210, 1215 (9th Cir. 1989). And as this Court's February 15, 2019 order in the *Stone* case recognizes, routine disclosure of warrant materials before a defendant's trial risks defendants' right to fair trials and courts' ability to seat impartial juries. *See Stone,* Doc. 36, at 3.

b. As explained, although the Special Counsel has concluded his work, the Special Counsel referred a number of matters that are ongoing and are being handled by other offices and entities. Disclosure of the warrant materials threatens the harms that courts have catalogued in holding that

the First Amendment provides no right of access to search warrant materials in ongoing investigations.

Nor would it make sense to recognize a right of access automatically once any indictment has been returned. In complex investigations, such as this one, where a single warrant may have relevance to interconnected lines of investigation, that test would fail to take into account tangible investigative harms from disclosure. An indictment does not end an overall investigation, for example, when a defendant is potentially involved in activities with other subjects or targets, and the warrant in question seeks evidence bearing on that joint activity, but the defendant has been charged only with a subset of his conduct under investigation. The probability of a continuing investigation post-indictment grows when the search targets are linked to other persons of interest by ties to a single organization, common associates, or coordinated activities. Disclosure of warrant materials could reveal sources, methods, factual and legal theories, and lines of investigation extending beyond the charged conduct.

### C. Even A Qualified First Amendment Right Would Not Justify Disclosure Here

Where a First Amendment right of access exists, it is qualified and may be limited "for cause shown that outweighs the value of openness." *Press-Enterprise I*, 464 U.S. at 509. The government may overcome the presumptive public access if (1) "a compelling interest" exists; (2) disclosure would create "a substantial probability" of harm to that interest; and (3) alternatives would not "adequately protect the compelling interest." *Brice*, 649 F.3d at 796.

Several compelling interests apply here. First, a "compelling government interest"— namely, safeguarding "the on-going investigation" —would overcome any right of access to the warrant materials being sought. *See In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (*Gunn*); *see also Washington Post v. Robinson*,

935 F.2d 282, 291 (D.C. Cir. 1991) (harm to ongoing investigation justifies sealing plea agreement). "[A] compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004). Where granting access will "disclose facts that are otherwise unknown to the public," the potential harm to the investigation is apparent. *Id.* The warrant materials sought by the movants could reveal "the nature, scope and direction" of government investigations. *See Gunn*, 855 F.2d at 574. They describe investigative sources and methods, state what has been searched (and, by implication, not discovered), identify potential subjects of the investigation, and reveal factual and legal theories. The dates and volume of warrants also reveal the evolution and direction of investigative interests. Making this information public while an investigation is ongoing could pose a clear threat to the investigations' integrity.

Second, a compelling interest in the fairness of the *Stone* proceedings would overcome any right of access. The Supreme Court has recognized that courts must "protect their processes from prejudicial outside interferences." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966); *see Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070-1075 (1991). As this Court recently recognized, the *Stone* case has garnered tremendous public attention. In such cases, it is particularly important to guard both facts and theories related to the charged conduct and facts and theories related to conduct that is not at issue in the case but that could prejudice jurors. *See United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 611-612 (2d Cir. 1988).

Third, a compelling interest in protecting uncharged individuals from unjustified reputational harm also weighs against any right of access to search warrant materials. *See Matter of Washington Post*, 201 F. Supp. 3d at 123-127; *cf.* Justice Manual § 1-7.400(B) (stating

Department of Justice policy against commenting on an ongoing investigation "before charges are publicly filed"). As noted, the search warrant materials discuss conduct and legal theories that sweep more broadly than the charges against Stone described in the grand jury's indictment. It would be unfair to release warrant materials that invade personal privacy interests or that "accuse persons of crime while affording them no forum in which to vindicate themselves," *cf. United States v. Briggs*, 514 F.2d 794, 802 (5th Cir. 1975) (criticizing the practice of naming unindicted coconspirators).

Contrary to movant's contention (Mem. 10-13), the calculus does not change with respect to warrant materials produced to Stone under protective order, or warrant materials that contain investigative information that may overlap with reports that have appeared in the media, or that may reference individuals who have claimed to have had dealings with Stone. Producing materials publicly poses different and more substantial risks to the investigation than producing them only to the defense under protective order. Similarly, press reports, which may be inaccurate or incomplete, do not erase the risks from disclosing search warrant materials. The warrant materials reflect details about the investigation not in the public domain.

Finally, redaction is not a feasible alternative here. Movants suggest (Mem. 11) that "[t]o the extent the Warrant Materials contain specific pieces of information" that should not be released, "those specific pieces of information can and should be redacted." Because the warrant materials are replete with sensitive investigatory information, information about Stone and the conduct at issue in the upcoming trial, and information about uncharged third parties, little information of public interest would remain. *See Gunn*, 855 F.2d at 574; *Matter of Washington Post*, 201 F. Supp. 3d at 128; *see also United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 (9th Cir. 2014). Indeed, almost any information about Stone could implicate the concerns

undergirding this Court's nondisclosure order in the *Stone* case. And even the number, nature, and targets of searches would reveal significant facts of ongoing investigative interest that could not be easily protected through redactions. Further, given the "degree of media scrutiny," too great a risk would exist that the public would be able to decipher redactions or that unredacted material would nonetheless invite damaging conjecture and speculation. *See Matter of Washington Post*, 201 F. Supp. 3d at 128. The burdensome task of undertaking warrant-by-warrant redactions is not a feasible alternative when it would create a significant probability of failure to protect the investigation and produce so little public gain.

## II. The Common Law Right Of Access Does Not Support Public Disclosure Of Search Warrant Materials Relating To A Pending Investigation

In addition to the qualified First Amendment right of access, a "broader, but weaker, common law right" of access applies to public records, including certain "judicial records." *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997). "It is uncontested, however, that the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). A finding that records should be accessible pursuant to the common law right of access "involves a two-step inquiry." *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996). First, a record must qualify as a "public record" to which the right can attach. *Id.* Second, if the common law right applies, courts must then "balance the government's interest in keeping the document secret against the public's interest in disclosure." *Id.* (internal quotation marks omitted). Here, balancing the relevant factors, the common law does not provide a right of access to the search warrant materials.

### A. Any Common Law Right Of Access Is Outweighed By Potential Harms

It is doubtful that any common law right of access attaches to warrant materials related to open investigations. *See Business of Custer*, 658 F.3d at 1192-1193 (no common law right attaches

to "warrant materials in the midst of a pre-indictment investigation") (internal quotation marks omitted); *Times Mirror,* 873 F.2d at 1219 (the "public need" or "ends of justice" basis for disclosure "cannot be satisfied while a pre-indictment investigation is ongoing"); *cf. Matter of Washington Post*, 201 F. Supp. 3d at 129 & n.10 (holding that "at least where an investigation has concluded, a common law right of public access generally attaches to such materials" but reserving "whether a common law right of access attaches to warrant materials in *ongoing* criminal investigations"); *but see United States v. Sealed Search Warrants*, 868 F.3d 385, 395-396 (5th Cir. 2017) (extending "case-by-case approach" to qualified common law right of access to requests for access to pre-indictment warrant materials).

But even assuming that a common law right attaches, the "presumption" of public access "may be outweighed" by "competing interests." *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). The balancing of interests turns on "the relevant facts and circumstances of the particular case." *Warner Commc'ns*, 435 U.S. at 599. The D.C. Circuit has identified six "generalized" factors to consider: (1) "the need for public access"; (2) the "extent of previous public access"; (3) whether "someone has objected to disclosure, and the identity of that person"; (4) "the strength of any property and privacy interests asserted"; (5) "the possibility of prejudice"; and (6) "the purposes for which the documents were introduced during the judicial proceedings." *Metlife*, 865 F.3d at 665; *see United States v. Hubbard*, 650 F.2d 293, 317-322 (D.C. Cir. 1980). Courts must also consider any other particularized interests that may be applicable. *Hubbard*, 650 F.2d at 323-324; *see Leopold*, 2018 WL 1129660, at *12, *23-*28 (considering the burden of providing access). A court's ultimate task is to "consider[] the relevant facts and circumstances" and determine what "justice . . . requires" *Metlife, Inc.*, 865 F.3d at 665-666, articulating its reasons for resolution of the unsealing request, *Sealed Search Warrants*, 868

F.3d at 397.

The relevant factors weigh heavily against public access at this time. As to the first factor, the government does not dispute that the public is interested in understanding Stone's case and related searches, evidence, and investigative theories. But as to the second, the public has not previously had access to warrant materials. The confidentiality of the investigation has thus not been eroded by prior judicial disclosure. As to the third factor, the government objects to public access at this stage. Others may object as well. As to the fourth factor, reputational interests, such as shielding third parties from unjustified association with criminal conduct, weigh against disclosure. *See Matter of Washington Post*, 201 F. Supp. at 122-127; *cf.* Justice Manual § 1-7.400(B) (stating Department of Justice policy against commenting on an ongoing investigation "before charges are publicly filed"). And most importantly, on factor five, for the reasons already discussed, the substantial risk of prejudice to ongoing investigations and the *Stone* proceedings militates against access. *See, e.g.*, *Sealed Search Warrants*, 868 F.3d at 395 ("If the unsealing of pre-indictment warrant materials would threaten an ongoing investigation, the district court has discretion . . . to leave the materials under seal"); *Pirk*, 282 F. Supp. 3d at 602.

### B. Redactions Are Not A Viable Alternative

Redactions would not practically address these concerns. As discussed, redactions could not address the publicity and potential effects on the *Stone* case. And the warrant materials reflect significant investigative details and concern uncharged, third-parties. Segregation of that information would not be feasible. *See Pirk*, 282 F. Supp. 3d at 602 (redaction not feasible to address common law presumption where confidential information "encompasses a large portion of the affidavit" and redaction "would render the affidavit of little use"); *Gunn*, 855 F.2d at 574 (similar); *see also Matter of Washington Post*, 201 F. Supp. 3d at 128 (finding redactions

inadequate).  Redactions would also impose an unreasonable burden on the government, for little public benefit.  *See Leopold*, 2018 WL 1129660, at *20, *23-*24 (considering "the imposition of substantial burdens" on the government and the court in rejecting of common law right of access).

## CONCLUSION

For the foregoing reasons, the motion for unsealing should be denied.

        Respectfully submitted,

        JESSIE K. LIU
        U.S. Attorney for the District of Columbia

By: */s/*
        Jonathan Kravis
        Michael J. Marando
        Assistant United States Attorneys
        United States Attorney's Office for the District of Columbia

        Aaron S.J. Zelinsky
        Special Assistant United States Attorney
        United States Attorney's Office for the District of Columbia

Dated: April 12, 2019