# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ASSOCIATED PRESS; CABLE NEWS NETWORK, INC.; THE NEW YORK TIMES CO.; POLITICO LLC; AND WP CO., LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED COURT RECORDS | Case No. 1:19-mc-00029-ABJ |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com

1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press; Cable News Network, Inc.; The New York Times Co.; POLITICO LLC; and WP Co., LLC, d/b/a the Washington Post*

No party to this matter disputes that the Special Counsel's investigation in general and the prosecution of Roger Stone in particular are matters of intense public interest, that the news media perform a vital function by informing the public about them, that Stone's Sixth Amendment right to a fair trial should be safeguarded, or that any ongoing law enforcement investigations must continue unimpeded.  What remains for this Court to decide, then is how to strike the proper balance among these compelling interests.  In their response briefs, the Government and Stone have taken the extreme position that there are no First Amendment or common-law rights of access to the Warrant Materials (despite ample precedent to the contrary), and that, even if there were, the interests in protecting ongoing criminal investigations, the privacy of innocent third parties, and Stone's fair trial rights overcome any access rights.

As demonstrated in the Media Coalition's opening brief, however, judges in this district have repeatedly recognized that the public has qualified First Amendment and common-law rights of access to search warrant materials.  The only question is at what point those rights attach, and experience and logic counsel that the point of attachment is either when the warrants are returned to the issuing court or, at the latest, when an indictment or criminal information is filed.  Moreover, the Government's and Stone's invocation of ongoing investigations, third-party privacy and Sixth Amendment concerns as a complete bar to release of any warrant materials sweeps far too broadly and provides insufficient specifics to overcome the public's qualified rights to these materials related to the Special Counsel's investigation.

Under the First Amendment and at common law, wholesale sealing of the Warrant Materials is improper, and this Court can and should make an independent determination regarding whether the materials should be released in full or with narrowly targeted redactions to address the legitimate concerns raised by the Government and Stone.

## I. THE PUBLIC HAS ACCESS RIGHTS TO THE WARRANT MATERIALS UNDER BOTH THE FIRST AMENDMENT AND THE COMMON LAW

Nothing in the Responses filed by the Government and Stone[1] is sufficient to overcome the Media Coalition's showing that the Warrant Materials[2] are subject to First Amendment and common-law rights of public access. The Government agrees with the Media Coalition that the correct analysis regarding whether there is a qualified First Amendment access right to warrant materials is the "experience and logic test." Government's Response to Motion for Public Access to Certain Sealed Court Records (Gov't Resp.) at 8 (Dkt. 11); Memorandum of Points and Authorities in Support of Motion for Public Access to Certain Sealed Court Records ("Mem.") at 7-8 (Dkt. 1-1). To satisfy that test, the Court must affirmatively answer "(1) whether the place and process have historically been open to the press and general public, and (2) whether 'public access plays a significant positive role in the functioning of the particular process in question.'" Mem. at 7-8 (quoting *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 87 (D.D.C. 2008) ("*In re NYT*")).

Courts in this District repeatedly have recognized a First Amendment right of public access to search warrant materials, as the Media Coalition noted in its Memorandum. Mem. at 7-9 (citing, *inter alia*, *In re Application of WP Co. LLC*, 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) ("*In re WP I*"); *In re NYT*, 585 F. Supp. 2d at 87). The only question this Court need resolve is whether this right of access to search warrant materials attaches upon the warrant's

---

[1] Because Stone's Response adopted the arguments in the Government's Response, references to the Government's Response apply equally to Stone. *See* Roger Stone's Response to Motion for Public Access to Certain Sealed Court Records ("Stone Resp.") at 1 (Dkt. 14).

[2] The Government professes some confusion regarding what records are included among the Warrant Materials the Media Coalition seeks. Gov't Resp. at 4-5 & nn.2-3. To clarify, the Warrant Materials include all warrants, applications, supporting affidavits, and returns related to all search and seizure warrants – whether under Rule 41 or the Stored Communications Act – that were executed as part of the investigation of Stone's conduct.

execution and return to the issuing court or once the subject or target of the warrant has been indicted or pleaded guilty.  Mem. at 6-8.  In arguing that there is *no* First Amendment right of access to the Warrant Materials – rather than asserting that compelling interests overcome the right in this instance – the Government attempts to evade longstanding precedent and practice in this District.  *See* Gov't Resp. at 9-13.

The Government's argument regarding the "experience" prong of the analysis rests on the false assertion that "'no evidence'" supports the conclusion that search warrant materials have historically been made public after a warrant's execution.  *Id.* at 9.  In fact, in this district, the opposite is true, as the Media Coalition established in its opening Memorandum.  *See* Mem. at 8.  Time and again, courts in this District have recognized that, as Judge Lamberth put it a decade ago, "routine historical practice countenances in favor of a qualified First Amendment right of access to warrant materials [because] warrant applications and receipts are routinely filed with the clerk of court without seal."  *In re NYT*, 585 F. Supp. 2d at 88; *see also In re WP I*, 2016 WL 1604976, at *2 (same).

The Government indirectly attempts to deflect this precedent by acknowledging that, while "[i]t may be the case today that some search warrant affidavits are made available in the clerk's office after execution," prosecutors routinely obtain sealing orders for such materials.  Gov't Resp. at 9-10.  But those practices exist precisely because search warrant affidavits are presumptively public.  Otherwise, there would be no need for the government to ask a court for a sealing order.

Indeed, then-Chief Judge Lamberth was so disturbed by what he viewed as improper sealing of warrant materials by the Clerk's office that he issued an order mandating the creation of a page on the Court's website "where all search warrants and arrest warrants will be publicly

4

available after execution, unless a separate sealing order is entered to redact all or portions when the government makes the showing required by *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) and *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991)." *In re Email Account Maintained on Computer Servers Operated by Google, Inc.*, 946 F. Supp. 2d 67, 69 (D.D.C. 2013). At bottom, the contention that the existence of court orders granting motions to seal demonstrates that there is no right of access to warrant materials turns logic on its head.

The government also seeks to minimize the import of this precedent by noting, correctly, that cases in this District recognizing the First Amendment right of access to warrant materials have granted access only after the conclusion of the relevant investigation. Gov't Resp. at 11. However, that purported "limitation" is illusory: Those cases involved requests for access that were *made* after the conclusion of the investigation; those courts expressly disclaimed any decision regarding whether the qualified First Amendment right of access might have applied at an earlier stage. *E.g.*, *In re WP I*, 2016 WL 1604976, at *2 n.2 (access right during ongoing investigations was not at issue because "the present application seeks only warrant materials related to the now-closed Campaign Finance Investigations"); *In re NYT*, 585 F. Supp. 2d at 90 n.10 (stating that court was deciding "only . . . the narrow issue" of whether right applied to warrant materials after investigation's conclusion, not whether right attached during ongoing investigations).

For the "logic" prong of the analysis, the Government argues that public access to warrant materials would interfere with law enforcement and cause "tangible investigative harms" to criminal cases even after a warrant has been returned and an indictment or information filed because an investigation may continue post-indictment and warrant materials may "reveal sources, methods, factual and legal theories, and lines of investigation extending beyond the

charged conduct." Gov't Resp. at 13. To the extent such concerns are legitimate, they can and should be addressed on a case-by-case basis when considering whether to seal or redact specific information within warrant materials, rather than being used as a justification for failing to recognize the existence of a qualified First Amendment access right. *C.f. United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017) (sealing of warrant materials must be assessed on case-by-case basis pursuant to common-law right of access). As Judge Lamberth recognized, public access to warrant materials allows for public oversight of the criminal justice system and "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re NYT*, 585 F. Supp. 2d at 90. Especially regarding the Special Counsel's investigation, which the President and his allies, including Stone, have criticized as illegitimate, the public is entitled to that oversight. The public has a qualified First Amendment right of access to warrant materials as a matter of both experience and logic. *See* Mem. at 7-9.

The Government also briefly argues that "it is doubtful" the qualified common-law right of access to court records applies to search warrant materials "related to open investigations." Gov't Resp. at 16-17. As the Media Coalition demonstrated in its Memorandum, however, courts in this district have held that warrant materials are judicial records subject to the common-law access right because they are "central to a court's probable cause determination." Mem. at 9 (quoting *In re Application of WP Co. LLC*, 201 F. Supp. 3d 109, 129 (D.D.C. 2016) ("*In re WP II*") (citation omitted)); *see also In re Search Warrants Issued on May 21, 1987*, 1990 WL 113874, at *6 (D.D.C. July 26, 1990) (recognizing common-law right of access to search warrant materials after indictment). Although courts in this district have reserved the question of whether the common-law right applies to warrant materials during ongoing investigations, as the

6

Government acknowledges, the Fifth Circuit recently held that this common-law access right applies in this circumstance, and unsealing must be decided on a case-by-case basis during ongoing investigations. Gov't Resp. at 17 (citing *In re WP II*, 201 F. Supp. 3d at 129 & n.10 and *Sealed Search Warrants*, 868 F.3d at 395-96). Moreover, the Government cannot credibly assert that *all* of the relevant Warrant Materials involve investigations that reasonably could be termed "ongoing," given that Stone is now awaiting trial for at least some of the conduct the Special Counsel investigated. *See In re NYT*, 585 F. Supp. 2d at 88 n.7 (holding there was no ongoing investigation although government claimed "Amerithax" probe was not "formally closed," because person government believed responsible for anthrax attacks had committed suicide).

## II. NEITHER STONE NOR THE GOVERNMENT HAS MADE A SUFFICIENT SHOWING TO JUSTIFY CONTINUED SEALING OF ALL OF THE WARRANT MATERIALS

It is uncontested in this matter that access rights under the First Amendment and the common law can be overcome only when necessary to protect compelling government or individual interests. *See* Mem. at 9-10, 14-15; Gov't Resp. at 13, 17. Although Stone and the Government invoke several legitimate interests – chief among them, the need to protect the integrity of ongoing investigations and Stone's upcoming trial – they treat these interests as talismanic justifications for blanket sealing of all of the Warrant Materials rather than explaining in their Responses the specific reasons why these interests require the continued sealing of specific information. *See* Gov't Resp. at 14-19; Stone Resp. at 1-2. Because they are conclusory and categorical, the Responses are of no help to the Court in making the required specific findings sufficient to enable meaningful review by an appellate court. *See Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"). The Media Coalition therefore

respectfully suggests that the Court release the Warrant Materials subject to redactions of information the withholding of which is clearly justified, such as bank account numbers and names of informants and law enforcement investigators. If the Court is otherwise inclined to approve continued sealing, the Media Coalition respectfully requests that the Court first perform an *in camera* inspection of the Warrant Materials so it may make specific findings on the record justifying sealing.[3]

### The Government and Stone Have Failed to Make the Necessary Showing to Overcome the First Amendment Access Right

The First Amendment access right may be overcome only where sealing serves a compelling government interest and is narrowly tailored to serve that interest. Mem. at 9-10; *In re NYT*, 585 F. Supp. 2d at 91. *See also* Gov't Resp. at 13 (discussing alternative formulation that sealing is allowed "if (1) a 'compelling interest' exists; (2) disclosure would create a 'substantial probability' of harm to that interest; and (3) alternatives would not 'adequately protect the compelling interest.'" (quoting *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011))). Merely asserting the existence of a compelling interest is insufficient, however. The Supreme Court has directed that, in a trial court's ruling on access, "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise I*, 464 U.S. at 510. Here, neither the Government nor Stone has provided the kind of details required for the Court to make that determination.

The Government has articulated three compelling government interests to be served by keeping the Warrant Materials sealed: protecting the integrity of ongoing investigations,

---

[3] The Media Coalition also respectfully requests that rather than holding *ex parte* proceedings related to unsealing the Warrant Materials, the Court allow counsel for the Coalition to participate in those proceedings, subject to an appropriate protective order if necessary.

preserving the fairness of the proceedings against Stone, and "protecting uncharged individuals from unjustified reputational harm." Gov't Resp. at 13-15. But the Government's Response does not provide specific information to justify its claim that wholesale sealing is the only narrowly tailored way to protect those interests. For example, it asserts – without providing any method of evaluating the claim – that the Warrant Materials "are [so] replete with sensitive investigatory information, information about Stone and the conduct at issue in the upcoming trial, and information about uncharged third parties, [that] little information of public interest would remain" if that sensitive material were redacted. *Id.* at 15.

The Special Counsel's investigation was perhaps among the most well-known criminal probe in history during its entire existence, making it unlikely that any potential subject or target of a related probe would first learn of prosecutors' interest in them by release now of these Warrant Materials. The Government offers little more than its say-so that *none* of the information in the Warrant Materials may be released without threatening ongoing investigations or the Stone prosecution itself. But, as the Fourth Circuit observed in a case cited by the Government, "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004). This Court must make specific, on-the-record findings justifying any continued secrecy.

To be clear, the Media Coalition does not dispute that the investigations spun off from the Special Counsel's work are ongoing, complex, and may involve avenues of investigation and potential subjects or targets that, for good reason, are not public. Nor does the Coalition disagree with the Government's wholly legitimate efforts to protect the integrity of these highly politically charged probes; in fact, the Coalition agrees that fair and impartial investigations must

9

be ensured.  *See* Mem. at 9, 14-15.  However, it is precisely because the Special Counsel's investigation – and the other probes it spawned – has been criticized as overbroad and illegitimate by the President and his allies (including Stone, both before and after his indictment) that transparency about the investigation is essential to serve the public's First Amendment interests as well as those of Stone, the Government, and the criminal justice system as a whole.  *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 7 (1986) ("*Press-Enterprise II*") ("[O]ne of the important means of assuring a fair trial is that the process be open to neutral observers.").

Moreover, similar search warrant materials have been released in other cases involving the Special Counsel's investigation, and it is notable that the Government does not here contend that there was any harm to those ongoing investigations as a result.  For example, a court in the Southern District of New York unsealed search warrant materials involving Michael Cohen, the President's former personal attorney, despite the Government's initial position that doing so would jeopardize ongoing investigations.  *United States v. Cohen*, 2019 WL 472577, at *6 (S.D.N.Y. Feb. 7, 2019).  There, the court allowed materials directly related to specific, continuing investigations to remain sealed but unsealed materials involving the crimes to which Cohen pleaded guilty and his other conduct that did not result in criminal charges.  *Id.*  The Government, via the office of the United States Attorney for the Southern District of New York, has stated that it does not oppose release of similar warrant materials filed in this District that the Media Coalition seeks in a separate action, so long as they are subject to similar redactions.  *See* Gov't's Resp. to Petitioners' Mot. To Unseal Certain Search Warrant Materials and Mot. For Leave to File Proposed Redactions Under Seal at 2, *In re Application for Access to Certain Sealed Warrant Materials*, No. 1:19-mc-00044-BAH (Apr. 18, 2019) (Dkt. 7).

The *Cohen* matter also undermines the credibility of the Government's position that "redactions are not a viable alternative" to wholesale sealing. Gov't Resp. at 18-19. The Southern District of New York was able to craft redactions sufficient to protect the legitimate interests the Government raised in *Cohen*, and the Government represented to Chief Judge Howell that similar redactions would be acceptable for release of Cohen-related warrants approved in this District.

Both the Government and Stone also claim that the Warrant Materials must remain entirely sealed to protect the privacy and reputational interests of innocent third parties who may be identified in the materials. Gov't Resp. at 14-15; Stone Resp. at 1.[4] But neither explains why these interests could not adequately be protected by narrowly targeted redactions of names and other identifying information about such third parties. And, as the Media Coalition pointed out in its Memorandum, these concerns do not apply to those persons already indicted or convicted in cases spawned by the Special Counsel's probe or to those, such as Jerome Corsi, who have stepped forward publicly to discuss their own roles in the investigation. *See* Mem. at 12-13. The Government's assertion that the Warrant Materials should remain sealed despite this publicity, Gov't Resp. at 15, makes no sense. As the Southern District of New York observed in *Cohen*, "[s]hielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny." 2019 WL 472577, at *7 (quoting *United States v. Basciano*, 2010 WL 1685810, at *4 (E.D.N.Y. Apr. 23, 2010)).

---

[4] Stone also appears to misunderstand that the Media Coalition's request for access is only for the Warrant Materials, in that he asserts that the "discovery provided would impinge upon the privacy of those witnesses, nonwitnesses, and Stone, if the Court were to order its wholesale disclosure." Stone Resp. at 1. For the avoidance of doubt, the Media Coalition reiterates it is seeking access to search warrant records, not the entirety of the discovery the Government has provided to Stone.

### The Government and Stone Have Failed to Make the Necessary Showing to Overcome the Common-Law Access Right

The Government and the Media Coalition also agree that where, as here, the common-law right of access applies, courts must balance the government's interest in keeping materials sealed against the public's interest in disclosure, considering:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citing *Hubbard,* 650 F.2d at 317-22); *see also* Gov't Resp. at 17-18; Mem. at 14.  Here, too, the Government's and Stone's arguments are insufficient to justify the continued blanket sealing of all of the Warrant Materials.

The first factor, the public's need for access to the Warrant Materials, weighs heavily in favor of disclosure, Mem. at 14-15, which the Government does not dispute, Gov't Resp. at 18. The Government argues that the second factor weighs against disclosure because the Warrant Materials have not been made public.  *Id.*  Even so, this factor should not be dispositive; the access right would be meaningless if prior sealing justified continued sealing.  Further, as discussed *supra*, similar materials have been released in other cases related to the Special Counsel's investigation.

Regarding the third factor, that the Government and Stone have objected to disclosure obviously cannot by itself warrant sealing, and here their desire clearly is outweighed by the public interest in these materials.  *See* Mem. at 15-16.  Contrary to the assertions by the Government and Stone, Gov't Resp. at 18, Stone Resp. at 1-2, the fourth factor does not weigh in

favor of disclosure. As discussed *supra*, the Government's and Stone's privacy claims are weak, and in any event the legitimate privacy concerns of any person can be addressed through redactions rather than blanket sealing.

The fifth factor, the possibility of prejudice to those opposing disclosure, also can be addressed through redactions and, as discussed *supra*, the Government and Stone have not provided sufficient specifics for the Court to be able to make findings justifying continued blanket secrecy.[5]

For these reasons, therefore, the objections by the Government and Stone are insufficient to justify continued wholesale sealing under the common-law access right as well.

## CONCLUSION

For all of the foregoing reasons, and for all of the reasons discussed in its opening brief, the Media Coalition respectfully requests that the Court grant its motion and enter an order unsealing the Warrant Materials, subject to those narrowly tailored redactions the Court makes specific findings are necessary to protect the compelling interests raised by the Government and Stone.[6]

---

[5] The Government does not address the sixth factor, which, as Judge Lamberth noted, was unique to the *Hubbard* case. *In re NYT*, 585 F. Supp. 2d at 92 n.13.

[6] To ameliorate the effect of continued sealing of any Warrant Materials the Court determines should not be made public at this time, the Media Coalition respectfully requests that the Court issue an order directing that the remaining Warrant Materials will be unsealed within 14 days of the conclusion of Stone's trial (or a guilty plea or other resolution of this case), subject to objections by the Government or Stone.

Respectfully submitted,

Dated: May 10, 2019                          BALLARD SPAHR LLP


                                             By:   /s/ Jay Ward Brown

                                             Jay Ward Brown (D.C. Bar No. 437686)
                                             brownjay@balladspahr.com
                                             Matthew E. Kelley (D.C. Bar No. 1018126)
                                             kelleym@ballardspahr.com
                                             BALLARD SPAHR LLP
                                             1909 K Street, NW
                                             Washington, D.C. 20006-1157
                                             T: (202) 508-1136
                                             F: (202) 661-2299

                                             *Counsel for The Associated Press; Cable News Network, Inc.; The New York Times Co.; POLITICO LLC; and WP Co., LLC, d/b/a/ the Washington Post*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 10, 2019, I caused the foregoing Reply Memorandum of Points and Authorities in Support of Motion for Public Access to Certain Sealed Court Records to be filed and served electronically via the Court's ECF system upon counsel of record.

                                                                                     */s/ Jay Ward Brown*
                                                                                    Jay Ward Brown