```
 1                IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2   - - - - - - - - - - - - - - - - x
     THE ASSOCIATED PRESS; CABLE
 3   NEWS NETWORK, INC.; THE NEW
     YORK TIMES CO.; POLITICO LLC;
 4   AND WP CO., LLC,
                                           CA No:  1:19-mc-00029-CRC
 5                Petitioners,
                                           Washington, D.C.
 6                                         Monday, January 6, 2020
     vs.                                   2:04 p.m.
 7
     UNITED STATES OF AMERICA,
 8
                  Respondent.
 9   - - - - - - - - - - - - - - - - x
     _____
10
                    TRANSCRIPT OF STATUS CONFERENCE
11         HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                     UNITED STATES DISTRICT JUDGE
12   _____
     APPEARANCES:
13   For the Petitioners:         MATTHEW E. KELLEY, ESQ.
                                  BALLARD SPAHR LLP
14                                1909 K Street, NW, 12th Floor
                                  Washington, DC 20006
15                                (202) 508-1112

16   For the United States:       JONATHAN IAN KRAVIS, ESQ.
                                  ADAM C. JED, ESQ.
17                                U.S. ATTORNEY'S OFFICE FOR D.C.
                                  555 Fourth Street, NW
18                                Washington, DC 20530
                                  (202) 252-6886
19
     For Roger Stone:             ROBERT C. BUSCHEL, ESQ.
20   (Appearing telephonically)   BUSCHEL & GIBBONS, P.A.
                                  One Financial Plaza
21                                100 S.E. Third Avenue
                                  Ft. Lauderdale, FL 33394
22                                (954) 530-5301

23   Court Reporter:              Lisa A. Moreira, RDR, CRR
                                  Official Court Reporter
24                                U.S. Courthouse, Room 6718
                                  333 Constitution Avenue, NW
25                                Washington, DC  20001
                                  202-354-3187
```

```
 1                     P R O C E E D I N G S
 2           THE COURTROOM DEPUTY:  Your Honor, we're on the
 3   record for Miscellaneous Case 19-29, Associated Press, et
 4   al. vs. United States of America.
 5           Counsel, please approach and identify yourselves
 6   for the record.
 7           MR. KRAVIS:  Good afternoon, Your Honor; Jonathan
 8   Kravis on behalf of the United States.
 9           THE COURT:  Mr. Kravis, how are you?
10           MR. KRAVIS:  Doing good.  Thank you, Your Honor.
11           And with me at counsel table is Adam Jed, also on
12   behalf of the United States.
13           THE COURT:  Okay.  Welcome.
14           MR. KELLEY:  Good afternoon, Your Honor; Matthew
15   Kelley for the Associated Press, Cable News Network, The New
16   York Times, Politico, and The Washington Post.
17           THE COURT:  Okay.  Welcome.
18           And do we have someone on the phone?
19           MR. BUSCHEL:  Yes, Judge; Robert Buschel on behalf
20   of Roger Stone.
21           THE COURT:  Okay.  Could you pronounce your last
22   name again, please.
23           MR. BUSCHEL:  Yes, "Boo-shell," B-U-S-C-H-E-L.
24           THE COURT:  Okay.  Can you hear us okay,
25   Mr. Buschel?
```

1      MR. BUSCHEL:  I can hear you great.

2      THE COURT:  Great.  Terrific.

3      All right.  Happy New Year, everybody.  I am
4 obviously new to this party so you may have to educate me a
5 little bit.  Why don't we start with Mr. Kravis.

6      Judge Jackson has recused herself from this matter
7 due to a conflict with one of the members of the media
8 coalition.  I obviously did not preside over the *Stone* case,
9 nor any of the other special counsel cases in this
10 courthouse, but you're stuck with me.

11      So I guess the first place I'd like to start is,
12 I've briefly reviewed the briefing in the matter.  Judge
13 Jackson did not decide the original motion prior to the
14 conclusion of the trial; is that correct?

15      MR. KRAVIS:  That's correct, Your Honor.

16      THE COURT:  Okay.  So we're working on a blank
17 slate here.

18      MR. KRAVIS:  Yes, Your Honor. The parties have
19 briefed the issue.  The movant filed the access motion; the
20 government filed an opposition; the movant filed a reply and
21 then a notice of supplemental authority.

22      THE COURT:  Great.

23      Now, I know that some of the materials were filed
24 under seal.  There's no need to seal this proceeding; is
25 that correct?

1    MR. KRAVIS:  That's correct, Your Honor.
2    THE COURT:  Okay.  So I guess my underlying
3 question is, now that the trial is over, what interests has
4 the government identified that would justify continued
5 sealing of the warrant returns?
6    MR. KRAVIS:  Yes, Your Honor.
7    We believe that there are some materials in the
8 warrant affidavits that can now be unsealed -- in the
9 affidavits that are responsive to the access request that
10 can now be unsealed in light of the conclusion of the Roger
11 Stone trial.
12    THE COURT:  All right.
13    MR. KRAVIS:  However, there are other materials in
14 those warrant affidavits that the government believes should
15 remain under seal either because those materials relate to
16 other pending investigations -- that is, investigations
17 other than the one that culminated in the Roger Stone
18 trial -- and materials that implicate the privacy and
19 reputational interests of uncharged third parties.  And so
20 the government's request at this point is for the Court to
21 set a deadline -- the government would propose 60 days --
22 for the government to go back and review the search warrant
23 affidavits that are responsive to the movant's access
24 requests and make a recommendation to the Court as to which
25 materials can be unsealed and which materials should remain

under seal.  And then the Court would have an opportunity to hear from Mr. Stone on that point, and then the Court could decide how to handle the matter from there.

THE COURT:  Okay.  Now, that would seem to make sense with respect to the affidavits, but as I read it, the applicants are seeking the returns themselves, correct?

MR. KRAVIS:  That is not how the government had understood the motion because the --

THE COURT:  I'll let Mr. Kelley speak for that.

MR. KRAVIS:  Okay.  I'll just note before -- to explain why I think what I think.

THE COURT:  Okay.

MR. KRAVIS:  The motion itself was captioned as a motion for public access to certain sealed court records. The returns themselves -- that is to say, the emails or text messages that were captured in response to the warrants -- are not court records.  They are not filed on the court docket.  They cannot be unsealed.  This would have -- to obtain them, I think a movant would have to file some sort of motion to compel production, not merely a motion to unseal court records.

That kind of motion would implicate very different legal standards from the ones that have been briefed by the parties, and so if that is what the movant is requesting, then I think we would ask for the opportunity to brief that

1    further because our view is that the only legal issue that
2    has been teed up in the filing so far has been whether the
3    standard is met for court records to be unsealed, not
4    whether the movant has met a standard to compel the
5    government to produce records that are in the government's
6    possession that do not exist on a court docket.
7                THE COURT:  Understood.  Thank you.
8                MR. KRAVIS:  Thank you, Your Honor.
9                THE COURT:  (To Mr. Kelley) Why don't you start
10   with the last point.
11               MR. KELLEY:  Certainly, Your Honor.
12               The government is correct.  We are not seeking any
13   of the materials seized under the warrants.  We are merely
14   seeking the warrants themselves, the supporting affidavits,
15   and other supporting information.
16               And I apologize if the term "returns" was a term
17   of art that I'm not familiar with.  I don't generally
18   practice on the criminal side of things.
19               THE COURT:  "Returns" generally mean the materials
20   that were returned as a result of the warrant.
21               MR. KELLEY:  Yes.  I apologize, Your Honor.
22               THE COURT:  That's okay.
23               MR. KELLEY:  What we were seeking was the
24   inventory that is provided to the magistrate judge when the
25   warrant is returned as executed.

1       THE COURT: Okay.
2       All right. And correct me if I'm wrong, but the
3  application does not relate to any other special counsel
4  case that was not before Judge Jackson. Those have been
5  referred to the presiding judge in those cases?
6       MR. KELLEY: That's correct. This is just for the
7  Roger Stone matter.
8       THE COURT: And this is just for the Stone matter,
9  not any of the other special counsel cases that were before
10 Judge Jackson.
11      MR. KELLEY: That's correct, Your Honor.
12      THE COURT: Okay. All right. So what's wrong
13 with Mr. Kravis's proposal, if anything?
14      MR. KELLEY: The media coalition does not have
15 much of a problem with the government's proposal. We agree
16 that if there is information in the warrant materials that
17 actually does jeopardize an ongoing investigation, that
18 material can be properly redacted from the materials that
19 are released to the public. Similarly, if there are
20 individuals who are uncharged who do have privacy interests
21 that need to be protected, those can be protected, again, by
22 targeted redactions of the names and other identifying
23 information of those persons.
24      I would like to point out, however, Your Honor,
25 that people who, for example, testified at the trial, we

1  would argue, would not have that kind of a privacy interest
2  because their name has been publicly associated with this
3  case, and, indeed, they have testified publicly.  So, for
4  people such as Steven Bannon, Randy Credico, and others who
5  testified at the trial of Mr. Stone, we would argue that
6  those folks do not have any privacy interests that should be
7  protected by redacting their information.
8          And to the question of the deadline, Your Honor,
9  we would ask for a shorter deadline than 60 days.  We think
10 that 30 days would probably be more realistic.  This case
11 has been pending for quite some time, as Your Honor said,
12 and, you know, our interest is to get this information to
13 the public in a timely manner.  So we would ask for 30 days
14 rather than 60.
15         THE COURT:  Okay.
16         Mr. Buschel, do you have anything to add on behalf
17 of Mr. Stone?
18         MR. BUSCHEL:  Yes, Judge; thank you.
19         That clarification regarding and returns was the
20 large part of our worry or concern on behalf of Mr. Stone.
21         THE COURT:  I'll bet it was.
22         MR. BUSCHEL:  Yes.  As to the 60 days, we'd ask
23 the Court -- Judge Jackson's sentencing is the third week of
24 February, so we would just -- we think that some of this
25 material might engender some more news.  We understand the

1  court, the district court, is not going to be affected by
2  the news, but we just ask that it be -- you know, that we
3  agree with the government's position that 60 days is
4  sufficient.
5          The only other issue -- and I guess we'll do it
6  upon review of what the government provides -- is that there
7  are some allegations in the applications that were later
8  discounted.  You know, we were investigating Roger Stone for
9  this bad crime and that bad crime that was never charged but
10 nonetheless was in it, and at that point I guess we would
11 want to be heard on that.  Other than that, the government's
12 position we agree with.
13         THE COURT:  Okay.
14         MR. BUSCHEL:  Thank you.
15         THE COURT:  All right.  Mr. Kravis, what I'd like
16 you to do is to prepare a proposed order on a 60-day
17 deadline, and that would sort of set forth the procedures
18 that will apply.  And, if necessary, I'll review any
19 disputes in camera and make a determination, which appears
20 to be the approach that Judge Howell took in the *Cohen* case,
21 which makes some sense to me.  And if you all can just get
22 that to me within the next couple of days, I'll execute it
23 and send you on your way.
24         MR. KRAVIS:  Very well.
25         THE COURT:  Does that make sense?

1      MR. KRAVIS:  Yes.  Thank you, Your Honor.

2      THE COURT:  Anything else, sir?

3      MR. KELLEY:  No, Your Honor.

4      MR. BUSCHEL:  Thank you, Judge.

5      THE COURT:  Thank you, all.

6           (Whereupon the hearing was

7            concluded at 2:16 p.m.)

8

9      **CERTIFICATE OF OFFICIAL COURT REPORTER**

10

11          I, LISA A. MOREIRA, RDR, CRR, do hereby

12 certify that the above and foregoing constitutes a true and

13 accurate transcript of my stenographic notes and is a full,

14 true and complete transcript of the proceedings to the best

15 of my ability.

16     Dated this 7th day of January, 2020.

17

18
                               /s/Lisa A. Moreira, RDR, CRR
19                             Official Court Reporter
                               United States Courthouse
20                             Room 6718
                               333 Constitution Avenue, NW
21                             Washington, DC 20001

22

23

24

25